UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

Nº 09-cv-2606 (JFB) (WDW)
_____

JEFFEREY HODGE,

Plaintiff,

VERSUS

VILLAGE OF SOUTHAMPTON, ET AL.,

Defendants.
_____

**MEMORANDUM AND ORDER**
January 20, 2012
_____

JOSEPH F. BIANCO, District Judge:

Plaintiff Jefferey Hodge ("Hodge" or "plaintiff") brought this action against the Village of Southampton (the "Village"), Michael Hunsucker ("Hunsucker"), and unnamed individuals alleging violations of Hodge's constitutional rights, pursuant to 42 U.S.C. § 1983, and negligence. In particular, plaintiff alleges the following constitutional claims: (1) an excessive force claim against defendant Hunsucker based upon the alleged intentional slamming of a car door on plaintiff's prosthetic leg during a car stop in Southampton on March 20, 2008; (2) a claim against defendant Hunsucker for deliberate indifference to serious medical need following the alleged injury; and (3) an unreasonable search claim based upon the search of his vehicle and alleged damage to the car during the search. In addition to the federal claims, plaintiff asserts negligence claims against Hunsucker and the Village.[1]

The defendants now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part defendants' motion for summary judgment. In particular, summary judgment is granted in favor of defendant Hunsucker as to the claims against Hunsucker for deliberate indifference to a serious medical need and unreasonable search and seizure, and denied as to the excessive force claim against defendant Hunsucker and the negligence claims against defendants Hunsucker and the Village.

---

[1] As confirmed at oral argument, all other claims in the complaint were withdrawn by plaintiff.

I. BACKGROUND

A. Factual Background

The Court has taken the facts set forth below from the parties' depositions, affidavits, and exhibits, and from the parties' respective Rule 56.1 Statements of Facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2005). Unless otherwise noted, where a party's 56.1 Statement is cited, that fact is undisputed or the opposing party has pointed to no evidence in the record to contradict it.[2]

On March 20, 2008, at approximately 1:45 p.m., Hodge was driving on County Road 39 in Southampton and was pulled over by a marked Village of Southampton police car for driving with a cracked windshield and using his cell phone while driving.[3] (Defs.' 56.1 ¶ 2; Defs' Ex. J, Southampton Village Police Department Printout.) After observing these violations, the officer who pulled Hodge over, defendant Michael Hunsucker, followed Hodge for approximately a quarter of a mile in his patrol car, turned on his police lights and pulled Hodge's vehicle over. (*Id.* ¶ 3.) After pulling to the side of the road, defendant Hunsucker approached Hodge's vehicle and asked him for his license and registration. (*Id.* at ¶ 4.)

In his deposition, Hodge testified that in response to defendant Hunsucker's request for his license and registration, Hodge told defendant Hunsucker that he had a prosthesis for his left leg. (Defs.' Ex. B, Hodge Deposition Transcript ("Hodge Tr.") at 23:3-7.) Hodge testified that he asked defendant Hunsucker if he could put his left leg out of the car so that he could get his license. (*Id.* at 23:5-7.) Hodge testified that defendant Hunsucker told Hodge he could open the door and opened the door for him. (*Id.* at 22:21-25.) Hodge testified that after defendant Hunsucker opened the door, defendant Hunsucker had his hands on the door and slammed the door on his prosthesis.[4] (*Id.* at 23:8-11.)

Defendant Hunsucker placed Hodge under arrest. (Defs.' 56.1 ¶ 10.)[5] At some point, Officers Kimberly McMahon, James Moore, Sergeant Darren Gagnon and Chief William Wilson responded to the scene.

---

[2] In addition, although the parties' Rule 56.1 Statements contain specific citations to the record to support their statements, the Court has cited to the Rule 56.1 Statements, rather than the underlying citation to the record, when utilizing the 56.1 Statements for purposes of this summary of facts.

[3] In their 56.1 Statements, the parties agree that the stop occurred at "approximately two o'clock in the afternoon." (Defs.' 56.1 ¶ 2; Pl.'s 56.1 ¶ 2.) Given the parties' agreement that plaintiff arrived at the police station at 2:03 p.m. (Defs.' 56.1 ¶ 17; Pl.'s 56.1 ¶ 17) and the time given for the stop of 13:45 p.m. in Defendants' Exhibit J, the Southampton Village Police Department printout describing the stop, the Court uses the time of the stop set forth in Defendants' Exhibit J.

[4] At his deposition, defendant Hunsucker testified to a different version of events regarding the stop. Defendant Hunsucker testified that when he approached Hodge's car, Hodge was agitated, yelling and shouting. (Defs.' Ex. C, Hunsucker Deposition Transcript ("Hunsucker Tr.") at 21:19-24.) Defendant Hunsucker testified that he asked Hodge for his license and registration, and Hodge "became agitated and decided to open the door." (*Id.* at 21:16-18.) Defendant Hunsucker testified that Hodge did not tell him he had a prosthetic device. (*Id.* at 20:4-6.) Defendant Hunsucker testified that Hodge opened the door about two inches, defendant Hunsucker moved to shut the door, and the door hit defendant Hunsucker's leg. (*Id.* at 22:9-23.) Defendant Hunsucker testified that Hodge's leg was not caught in the door. (*Id.* at 23:2-4.)

[5] Plaintiff admits to the substance of the facts contained in this paragraph, but "notes that [Defendants' statements do] not purport to set forth the sequence of events." (Pl.'s 56.1 ¶¶ 10-13.)

2

(Defs.' 56.1 ¶ 12.) Hodge was placed in the back of a police car. (Defs.' 56.1 ¶ 13.)

Plaintiff observed Officer McMahon conducting a search of his vehicle. (Defs.' 56.1 ¶ 14.) Officer McMahon was investigating the contents of a plastic box of pills which was in plain sight in the vehicle. (Defs.' 56.1 ¶ 15.) Defendant Hunsucker also took part in the search. (Defs.' Ex. C, Hunsucker Tr. at 33:9-12.) Hodge testified that he observed Officer McMahon drive his car back to police headquarters. (Defs.' Ex. B, Hodge Tr. at 46:13-21.)

Hodge was transported to the police station by defendant Hunsucker. (Defs.' 56.1 ¶ 17.) Hodge arrived at the station at 2:03 p.m. (*Id.*) Hodge testified that when he was at the police station, he asked police officers to take him to the hospital because his leg was hurting.[6] (Defs.' Ex. B, Hodge Tr. at 64:6-9.) Hodge testified that he first asked to go to the hospital when he was at the station, handcuffed to a bench. (*Id.* at 65:13-16.) Hodge could not remember who he asked to take him to the hospital. (*Id.* at 64:21-65:2.) Hodge was transported to Southampton Hospital at 4:49 p.m. (Defs.' 56.1 ¶ 19.) Neither party has presented evidence of the identities of the officers who took Hodge to the hospital.

According to the Southampton Hospital Emergency Room Outpatient Record, Hodge presented with joint pain and swelling, extremity pain and swelling, and bruising. (Defs.' Ex. G, Southampton Hospital Emergency Room Outpatient Record.) An x-ray of Hodge's left leg revealed that there was no fracture or abnormality. (Defs.' 56.1 ¶ 21.) According to the same record, Hodge was given 600 milligrams of Motrin and an ice pack to take with him. (Defs.' Ex. G, Southampton Hospital Emergency Room Outpatient Record.) Hodge testified that the officers who were at the hospital with him were directed to give Hodge ice and Motrin. (Defs.' Ex. B, Hodge Tr. at 72:12-15.) Police officers transported Hodge back to the police station and returned him to his cell. (Defs.' 56.1 ¶ 22.) Hodge testified that he did not receive the ice or Motrin. (*Id.* 72:16.) Hodge was arraigned the next day at approximately 2:00 p.m. and released on $250 bail. (Defs.' 56.1 ¶ 24.) Hodge testified that after his release, he sought treatment for his leg because of continued pain. (Defs.' Ex. B, Hodge Tr. at 78:22-79:5.) Hodge testified that he also needed a new prosthesis made because of the swelling in his leg. (*Id.* at 81:22-25.)

Hodge testified that when he was released, his girlfriend drove him to the station to pick up his car. (*Id.* at 92:6-12.) The car was not impounded. (*Id.*) Hodge testified to the following regarding the state of his car:

> When I got there, the ashtray was broken, all any tools were all over my car. They had dumped the bag. All of my stuff was out. My duffle bag that I had, my rugs was for tore up [sic] in the back of the car, the back of the car where they went through, they threw all my tools my mason tools….My screw guns, everything, screws, nails thrown everywhere. Ashtray, cigarette butts all over the car and it wasn't like that before they stopped me.

(*Id.* at 93:3-13.) Hodge testified that he bought another ashtray and glued down the rug. (*Id.* at 95:2-8.)

---

[6] Hodge also testified that he asked for "Billy Wilson," presumably Chief William Wilson. (Defs.' Ex. B, Hodge Tr. 65:5-6.)

3

B.  Procedural Background

Plaintiff filed the complaint in this action on June 18, 2009.  Defendants answered the complaint on November 4, 2009.  On August 24, 2011, defendants moved for summary judgment.  Plaintiff submitted his opposition on October 23, 2011.  Defendants submitted their reply on November 2, 2011.  The Court held oral argument on December 2, 2011.  The Court allowed plaintiff's counsel to submit a supplemental letter on December 12, 2011.  Defendants' counsel also submitted a supplemental letter on December 7, 2011.  The Court has fully considered the submissions of the parties.

II. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(a), a court may only grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of showing that he or she is entitled to summary judgment. *Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (emphasis in original)).  As the Supreme Court stated in Anderson, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. 2505 (citations omitted).  Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48, 106 S. Ct. 2505 (emphasis in original).  Thus, the nonmoving party may not rest upon mere conclusory allegations or denials but must set forth "'concrete particulars'" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir.1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)).  Accordingly, it is insufficient for a party opposing summary judgment "'merely to assert a conclusion without supplying supporting arguments or facts.'" *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77

4

F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

### III. DISCUSSION

A. Claims Arising Under 42 U.S.C. § 1983

To prevail on a claim under Section 1983, a plaintiff must show: (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state law. 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).

There is no dispute for purposes of this motion that defendants were acting under color of state law. The question presented, therefore, is whether defendants' alleged conduct deprived Hodge of his Fourth and Fourteenth Amendment rights.[7] Plaintiff alleges his rights were violated when (1) defendant Hunsucker slammed his car door on his leg and (2) officers failed to promptly bring Hodge to the hospital after his injury, or provide him with Motrin or ice as directed by medical personnel.

1. Excessive Force

Defendant Hunsucker argues that the excessive force claim cannot survive summary judgment because the force used by Officer Hunsucker in effectuating the arrest was reasonable. As set forth below, the Court concludes that there is sufficient evidence in the record, when construed most favorably to plaintiff, for the excessive force claim to survive summary judgment. In particular, if all of plaintiff's evidence is credited and all reasonable inferences drawn in his favor, a genuine issue of material fact exists as to whether Officer Hunsucker intentionally slammed the car door on plaintiff's leg, causing an injury.

A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotations omitted).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis of an excessive force claim involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir.2000) (citations omitted).

Hodge's claim centers around the allegation that defendant Hunsucker

---

[7] Though plaintiff's complaint only asserts claims under the Fifth and Fourteenth Amendment rights, the parties have briefed, and the court assumes, plaintiff's claims as proceeding under the Fourth Amendment as well.

5

intentionally and without cause slammed his car door onto his leg, and Hodge has submitted testimony and medical records in connection with the alleged injury to his leg. Defendant argues that, even if Hodge's evidence is accepted as true defendant Hunsucker's actions were reasonable and Hodge's injury was *de minimis*. Both arguments fail. Viewing the evidence most favorably to the plaintiff, a rational jury could credit Hodge's testimony that defendant Hunsucker slammed the door on his leg and that such conduct establishes an unreasonable act on the part of defendant Hunsucker. Defendant's argument that it is undisputed that Hodge's injury was *de minimis,* and thus cannot support an excessive force claim, is similarly unavailing.

The Court recognizes that there may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that it cannot rise to a constitutional violation as a matter of law. *See, e.g.*, *Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant where plaintiffs failed to demonstrate that the alleged action by the police officer "was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale"); *Johnson v. Police Officer # 17969*, No. 99-CV-3964 (NRB), 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive force claim based on admission that plaintiff resisted arrest and only alleged minor injuries); *cf. Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) (finding qualified immunity existed for excessive force claim under Due Process Clause, where the claim was related to police conduct toward individuals present during execution of a search, because the force used "was de minimis, necessary, appropriate, and benign"); *Grifen v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999) (noting, in addressing excessive force claim under the Eighth Amendment, that "*de minimis* uses of force generally do not suffice to state a constitutional claim"). However, a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising." (citing *Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir. 1987))); *see also Hayes v. New York City Police Dep't*, No. 06-0595-PR, 2007 WL 130332, at *1 (2d Cir. Jan. 16, 2007) (summary order) (citing *Maxwell* and noting that "we have permitted claims to survive summary judgment where the only injury alleged is bruising"); *Robison*, 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.") (citations omitted).

In the instant case, Hodge testified at his deposition that (1) defendant Hunsucker asked for his license and registration during the car stop; (2) Holdge told him that he had a prothestic leg and needed to put his left leg out of the car to get his wallet out of his back pocket; (3) after defendant Hunsucker opened the door for plaintiff and plaintiff stuck his left leg out of the car as he was trying to retrieve his wallet, the door was slammed against his leg. (Defs.' Ex. B, Hodge Dep. at 23:3-11 ("I asked him if I put my prosthesis out because I couldn't bend over to get my wallet out of my back pocket so I asked him could I put my left leg out of the car with my prosthesis so I put it out. He had he [sic] hands on the door and I went to get my license and he slammed – and the

6

door slammed on my leg on my – on my prosthesis.") and 26:15-20 ("When he [Hunsucker] came to the car, I asked him could I open the door. He opened it for me. I put my left leg out still sitting in the car and the next thing I know I bend over to get my wallet with my license and the door slam on my leg, on my stump.").)

Although defendants' counsel correctly notes that Hodge did not see defendant Hunsucker actually slamming the door, a rational jury could reasonably infer from the totality of the circumstances if plaintiff's testimony is credited in its entirety – namely, that defendant Hunsucker knew plaintiff was putting his leg outside the door, opened the door for Hodge, had his hands on the door, saw plaintiff's leg outside the door, was standing next to the door, and that the door was then slammed – that defendant Hunsucker intentionally (rather than accidently) slammed the door on his leg, causing an injury to his leg. Although this is not the only permissible inference that could be drawn from plaintiff's testimony by a rational jury, it is still a reasonable one. The Court also recognizes that a jury must also examine plaintiff's credibility, and may reject his version of the events in light of the entire record. However, if plaintiff's testimony is credited and all reasonable inferences are drawn in plaintiff's favor, plaintiff could prove to a rational jury that this alleged gratuitous use of force was an objectively unreasonable use of force. *See, e.g.*, *Johnson v. City of New York*, No. 05-CV-2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (denying summary judgment on claim of excessive force during execution of a search and noting that "[w]hile not every push or shove violates the Fourth Amendment, . . . there surely would be no objective need to 'stomp' and 'kick' an individual already under police control." (citations and quotations omitted)); *Pierre-Antoine v. City of New York*, No. 04-CV-6987 (GEL), 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (holding that repeatedly striking a subdued individual would constitute an objectively unreasonable use of force under the Fourth Amendment); *Graham v. Springer*, No. 03-CV-6190 (CJS), 2005 WL 775901, at *6 (W.D.N.Y. Apr. 5, 2005) (denying summary judgment on excessive force claim where plaintiff's evidence indicated that he was kicked while lying on the ground in handcuffs); *Jones v. Ford*, No. 00-CV-0934, 2002 WL 1009733, at *4 (M.D.N.C. Feb. 15, 2002) ("If Defendant . . . did in fact kick Plaintiff several times while he was on the ground handcuffed, such acts could constitute excessive force in violation of the Fourth Amendment.") (citing *Hafner v. Brown*, 983 F.2d 570 (4th Cir.1992)). Given the disputed issues of fact in this record (including the credibility issues that need to be resolved), the Court cannot conclude that any claim of this type by Hodge fails as a matter of law.

The fact that plaintiff did not require substantial medical treatment at the hospital following the incident does not necessarily mean that Hunsucker is entitled to summary judgment. More specifically, in *Maxwell*, the Second Circuit specifically focused on a Section 1983 claim alleging that the police had banged the head of the plaintiff while she was being put into a police car. The district court in *Maxwell* granted summary judgment for the defendants and found, among other things, that plaintiff's claim that she "'allegedly scraped her head when being shoved into the car is not sufficient for any reasonable jury to find an excessive force claim in this case – minor scrapes, bumps or bruises potentially could occur, often unintended, during any arrest, and an arresting officer can not [sic] be held unremittingly liable for every such

7

incident.'' *Maxwell*, 380 F.3d at 109 (quoting *Maxwell v. City of New York*, 272 F. Supp. 2d 285, 298 (S.D.N.Y. 2003)). However, the Second Circuit reversed the district court and found the alleged conduct and injury sufficient to require the claim to be submitted to the jury. *Id.* at 109-10.

Thus, although the jury may consider the alleged lack of serious injury as evidence that the implemented force was not excessive, and may weigh it against Hodge's testimony, that does not mean that there are no circumstances under which Hodge can prevail. *See Pierre-Antoine*, 2006 WL 1292076, at *5 (noting that although the lack of severe injury may be considered by a jury as evidence that force was not excessive, it did not entitle defendants to judgment as a matter of law); *see Murray v. Williams*, No. 05-CV-9438 (NRB), 2007 WL 430419, at *7 (S.D.N.Y. Feb. 7, 2007) (refusing to find that alleged force was *de minimis* where plaintiff alleged a laceration to his lower lip, a bloody nose, pain and suffering, and mental anguish); *see also Amato v. City of Saratoga Springs*, 170 F.3d 311, 317 (2d Cir. 1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury.").

In any event, although defendants focus on the fact that Hodge was only treated with ice on his stump and Motrin at the hospital, he also did testify that, after the hospital stay, he continued to be in pain for days as his stump remained swollen, and his prosthesis had to be replaced to provide more room for his stump. (Defs.' Ex. B, Hodge Dep. at 79:3-5 ("[T]he next morning I went to court I left and it had to be a day after I would see my doctor. Because my leg was still hurting.") and 82:4-17 ("After I left Dr. Pobre he told me to go talk to Matt about making me a new prosthesis…. Because my leg had swelled up. I couldn't wear the prosthesis. I couldn't get around unless I had a prosthesis. My leg was swollen. When I left court and everything and so I went to see Dr. Pobre and whatever he said that's what I do. He tell me to see my prosthesis doctor to get, you know, and Matt had to drill the prosthesis bigger so it wouldn't hurt my leg so I could walk.").) If this testimony is credited, it certainly would establish a more than *de minimis* injury.

In sum, accepting plaintiff's evidence as true and drawing all reasonable inferences in plaintiff's favor, plaintiff has created a genuine issue of material fact as to whether Hunsucker used excessive force by intentionally slamming the door on his prosthetic leg.

### 2. Deliberate Indifference to Serious Medical Need

Defendant Hunsucker argues that there is insufficient evidence for the claim regarding deliberate indifference to a serious medical need to survive summary judgment. As set forth below, the Court agrees. Even accepting plaintiff's evidence as true and drawing all reasonable inferences in his favor, a rational jury could not conclude that defendant Hunsucker was deliberately indifferent to a serious medical need at the scene of the arrest or during transportation back to the police station. Although plaintiff has other evidence of medical indifference after his arrival at the police station, it is undisputed that defendant Hunsucker was not present at that time and such later alleged actions by other officers cannot be a

8

basis for a claim against defendant Hunsucker.[8]

### a. Legal Standard

"Claims for deliberate indifference to a serious medical condition or other serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009). Thus, the Court analyzes plaintiff's deliberate indifference claim under Eighth Amendment jurisprudence.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" and therefore "states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 104-05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976) (quotation marks and citation omitted). As the Second Circuit has explained,

> [t]he Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody. Moreover, under 42 U.S.C. § 1983, prison officials are liable for harm incurred by an inmate if the officials acted with "deliberate indifference" to the safety of the inmate. However, to state a cognizable section 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice.

*Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) (citations omitted). Within this framework, "[d]eliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment, in violation of the Eighth Amendment, as made applicable to the states through the Fourteenth Amendment." *Bellotto v. Cnty. of Orange*, 248 Fed. App'x 232, 236 (2d Cir. 2007). Thus, according to the Second Circuit,

> [d]efendants may be held liable under § 1983 if they ... exhibited deliberate indifference to a known injury, a known risk, or a specific duty, and their failure to perform the duty or act to ameliorate the risk or injury was a proximate cause of plaintiff's deprivation of rights under the Constitution. Deliberate indifference is found in the Eighth Amendment context when a prison supervisor knows of and disregards an excessive risk to inmate health or safety.... Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause.

*Ortiz v. Goord*, 276 Fed. App'x 97, 98 (2d Cir. 2008) (citations and quotation marks omitted); *see also Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) ("Deliberate indifference will exist when an official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)); *Curry v. Kerik*, 163 F. Supp. 2d 232, 237 (S.D.N.Y. 2001) ("'[A]n official acts with the requisite deliberate indifference when that official knows of and disregards an excessive risk to inmate health

---

[8] However, as noted *infra*, defendant Hunsucker's actions and these later actions can be the basis of a negligence claim under state law against the Village of Southampton.

or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks omitted))).

In particular, the Second Circuit has set forth a two-part test for determining whether a prison official's actions or omissions rise to the level of deliberate indifference:

> The test for deliberate indifference is twofold. First, the plaintiff must demonstrate that he is incarcerated under conditions posing a substantial risk of serious harm. Second, the plaintiff must demonstrate that the defendant prison officials possessed sufficient culpable intent. The second prong of the deliberate indifference test, culpable intent, in turn, involves a two-tier inquiry. Specifically, a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.

*Hayes*, 84 F.3d at 620 (internal citation omitted); *see also Phelps v. Kapnolas*, 308 F.3d 180, 185-86 (2d Cir. 2002) (setting forth two-part deliberate indifference test).

In *Salahuddin v. Goord*, the Second Circuit set forth in detail the objective and subjective elements of a medical indifference claim. 467 F.3d 263 (2d Cir. 2006). In particular, with respect to the first, objective element, the Second Circuit explained:

> The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. Only deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Determining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care. As the Supreme Court has noted, the prison official's duty is only to provide reasonable care. Thus, prison officials who act reasonably [in response to an inmate-health risk] cannot be found liable under the Cruel and Unusual Punishments Clause, and, conversely, failing to take reasonable measures in response to a medical condition can lead to liability.
>
> Second, the objective test asks whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner. For example, if the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious. Factors relevant to the seriousness of a medical condition include whether a reasonable doctor or patient would find [it] important and worthy of comment, whether the condition significantly affects an individual's daily activities, and whether it causes chronic and substantial pain. In cases where the inadequacy is in the

10

medical treatment given, the seriousness inquiry is narrower. For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone. Thus, although we sometimes speak of a serious medical condition as the basis for an Eighth Amendment claim, such a condition is only one factor in determining whether a deprivation of adequate medical care is sufficiently grave to establish constitutional liability.

467 F.3d at 279-80 (citations and quotation marks omitted); *see also Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 413-14 (S.D.N.Y. 2008).

With respect to the second, subjective component, the Second Circuit further explained:

The second requirement for an Eighth Amendment violation is subjective: the charged official must act with a sufficiently culpable state of mind. In medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health. Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law. This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result. Although less blameworthy than harmful action taken intentionally and knowingly, action taken with reckless indifference is no less actionable. The reckless official need not desire to cause such harm or be aware that such harm will surely or almost certainly result. Rather, proof of awareness of a substantial risk of the harm suffices. But recklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent.

*Salahuddin*, 467 F.3d at 280 (citations and question marks omitted); *see also Jones*, 557 F. Supp. 2d at 414.

b. Application

Even accepting plaintiff's evidence as true, plaintiff has been unable to produce sufficient evidence that would enable a rational jury to find that defendant Hunsucker was deliberately indifferent to a serious medical need of the plaintiff prior to his arrival at the police station.

As a threshold matter, the gravamen of plaintiff's claim is based on two complaints: (1) that his trip to the hospital was delayed despite his requests for medical treatment, and (2) after he was released from the hospital, he was denied ice and Motrin. Although plaintiff has argued that the "defendants" are responsible for these actions, plaintiff has only brought the Section 1983 claim for deliberate indifference to a serious medical need against Michael Hunsucker. Plaintiff has presented no evidence that defendant Hunsucker played any role in the delay of treatment once Hodge asked to go to the hospital, and plaintiff has presented no

11

evidence that defendant Hunsucker was the officer who denied him ice or Motrin.

Thus, for plaintiff to prevail on his deliberate indifference claim against defendant Hunsucker, he must satisfy both prongs of the deliberate indifference test with respect to defendant Hunsucker's actions at the scene of the arrest. Plaintiff cannot do so. Even if plaintiff's evidence is credited, plaintiff is unable to satisfy the second prong of the deliberate indifference test with respect to defendant Hunsucker, the only individual defendant in this action.[9] Specifically, even if plaintiff's testimony is credited, no rational jury could conclude that defendant Hunsucker possessed "knowledge that [Hodge] face[d] a substantial risk of serious harm." *Hayes*, 84 F.3d at 620 (internal citation omitted).

First, plaintiff has presented no evidence that Hunsucker was aware of Hodge's medical concerns at the scene of the arrest. Hodge claims that he was in pain at the scene of the stop, but he can point to no evidence that defendant Hunsucker was aware of this pain. Though plaintiff points to his deposition testimony that he "hollered out" (Pl.'s Ltr, Dec. 12, 2011, ECF No. 30), his testimony actually states "Q. You don't remember at all what you said? A. I don't think I said anything. Q. You – A. I don't think I said anything. Why did you do that, I think I hollered out." (Defs.' Ex. B, Hodge Tr. at 28:6-12.) Plaintiff also argues that he told defendant Hunsucker and Chief Wilson that he was in pain, when in fact his testimony reveals that his complaints were directed to Chief Wilson:

Q. Did you tell Officer Hunsucker or Chief Wilson that you were having trouble getting out of the car?

A. I told them that -- I told them I was hurt. I couldn't even stand up because he slammed my leg in the door. I told Billy Wilson that when he came.

Q. So you did talk to him.

A. I told Billy Wilson he slammed the door on my left side of my leg -- on my prosthesis, on my stump.

Q. On your prosthesis or your stump.

A. Yes.

Q. What did you say specifically?

A. I said he slammed the door on my leg, the stump of my leg. The door hit my left leg.

Q. What else did you tell Chief Wilson?

A. I just said.

Q. Did you tell him that you couldn't get up, did you tell him you were hurt?

A. He saw I was in pain I guess when he came over to the car.

(Defs.' Ex. B, Hodge Tr. at 39:24-40:22.) Despite Hodge's initial statement in the deposition testimony, other portions of his testimony suggest that Hunsucker was not present during this conversation. (*See* Ex. B, Hodge Tr. at 37:31-38:6 ("Q. At some point in time you already testified that Chief Wilson asked you -- what did he ask you? . . . A. Chief Wilson came over and

---

[9] Because the Court concludes that the second prong cannot be satisfied against defendant Hunsucker as a matter of law based upon the evidence in the record, the Court makes no ruling with respect to the first prong of the deliberate indifference test, whether there was a deprivation or medical care and whether the injury was sufficiently serious.

said Jeffery, calm down, I remember, and he told Sergeant Hunsucker to get back from my car."); 30:16-18 ("Only thing I remember, Billy Wilson, I remember Billy Wilson came and told the officer to get back from the car . . ."); and 43:17-20 ("Officer Moore came to the door and what happened?  A.  I don't know where Officer Hunsucker went.  I just know Billy Wilson . . . ").)

Second, even if defendant Hunsucker was present for some of Hodge's complaints at the scene, there is no evidence that defendant Hunsucker was aware that there was a substantial risk of serious harm to Hodge's health.  In particular, there is no evidence that defendant Hunsucker saw bleeding, bruising, fainting or other obvious indicia of serious injury.  Moreover, it is undisputed that, at this point in time, plaintiff did not request any medical treatment.[10]

In sum, given plaintiff's own testimony regarding the events at the scene – namely, that he did not make any complaint of serious physical injury specifically to Hunsucker and that he did not request medical treatment prior to Hunsucker bringing him to the police station – there is simply no evidence in the record for a rational jury to conclude that Hunsucker had an awareness of a substantial risk of serious harm to plaintiff from any injury to his leg.  Moreover, since it is undisputed that Hunsucker was not present after bringing plaintiff to the police station, the later events cannot be a basis for a medical indifference claim against Hunsucker.  Accordingly, defendant Hunsucker is entitled to summary judgment on this claim.

3. Unreasonable Search and Seizure

Defendants argue that any Fourth Amendment claim based upon the search of the van, or damage to the van during the search, cannot survive summary judgment.  For the reasons set forth below, the Court agrees.

It is undisputed (as confirmed at oral argument) that the pills[11] were in plain view, allowing police officers to search the van. *See Horton v. California*, 496 U.S. 128, 136-37, 110 S.Ct. 2301 (1993) (no Fourth Amendment violation where item is in plain view, its incriminating character is immediately apparent, and officer has a lawful right of access to the item).  Given the officers' discovery of the pills, the search of the van was valid under the "automobile" exception to the warrant requirement, which allows "a warrantless search of a readily mobile vehicle where there is probable cause to believe that the vehicle contains contraband." *United States v. Navas*, 597 F.3d 492, 497 (2d Cir. 2010). Plaintiff's Fourth Amendment claim based on the reasonableness of the search at the scene must fail.

At oral argument, plaintiff's counsel explained that plaintiff's unreasonable search and seizure claim does not rest on the search of the car at the scene which resulted in the seizure of the pills, but rather is based on an allegation that officers unlawfully searched his van at the station after the initial search at the scene of the traffic stop. More specifically, plaintiff asserts that the car must have been searched a second time because Officers McMahon and Hunsucker

---

[10] Although plaintiff's counsel suggested at oral argument that there is evidence in the record that plaintiff requested medical attention at the arrest scene, he was unable to point to any such evidence at oral argument or in his supplemental submission.

[11] Plaintiff does not dispute that the pills were in an unmarked container.

13

described the search at the scene as being fairly routine and brief, and the state of the car indicated a much more invasive search.

As a threshold matter, plaintiff has produced no evidence that a second search was conducted.[12] Additionally, plaintiff's argument that the search at the scene was cursory is belied by plaintiff's own deposition testimony, where he stated "I saw them tearing my car up" (Defs.' Ex. B, Hodge Tr. at 47:22) and "I saw her throwing things all over my car." (*Id.*at 49:17.) In any event, a second search of the van, if it occurred at all, would be acceptable under the inventory search exception to the warrant requirement. *See Colorado v. Bertine*, 479 U.S. 367, 371-72, 107 S.Ct. 738 (1987) ("[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger."). There is no requirement that an automobile be impounded in a specific lot in order for an inventory search to be lawful. Accordingly, given that a complete inventory search of the van would be lawful, any Fourth Amendment claim for an alleged search of the van at the police station must fail as a matter of law.

Finally, plaintiff alleges that regardless of the reasonableness of the search or searches, the police acted unreasonably when they damaged his van. Plaintiff alleges that his tools and belongings were strewn about the van and he was forced to glue down portions of the rug in his van. As set forth below, even if plaintiff's evidence of damage to his car is credited, such damage during a search as a matter of law would not rise to the level of a constitutional violation.

"The reasonableness requirement of the Fourth Amendment applies not only to prevent searches and seizures that would be unreasonable if conducted at all, but also to ensure reasonableness in the manner and scope of searches and seizures that are carried out, whether pursuant to a warrant or under 'exigent circumstances.' Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits not subject to suppression." *Ochoa v. City of West Haven*, No. 3:08-cv-00024(DJS), 2011 WL 3267705, at *6 (D. Conn. July 29, 2011) (internal quotation marks and citations omitted). The plaintiff must allege "that the officers' actions were unreasonable or malicious, and that more than ordinary disarray and damage incident to the execution of the warrant" or search occurred. *Kirkland v. City of New York*, No. 06 CV 0331(NG)(CLP), 2007 WL 1541367, at *7 (E.D.N.Y. May 25, 2007); *see also Bender v. Alvarez*, No. 06-CV-3378, 2009 WL 112716, at *7 (E.D.N.Y Jan. 16, 2008) (granting summary judgment where plaintiff alleged items were thrown on the ground and did not demonstrate that defendants wantonly damaged or destroyed his property).

Here, plaintiff has produced evidence of only minimal damage to his van, through his testimony that he needed to replace an ashtray and glue down portions of the rug. Given the circumstances here, the general disarray of the van and slight damage to the van in executing the search do not, as a matter of law, rise to the level of a constitutional violation. *See, e.g.*, *Lewis v. City of Mount Vernon*, 984 F. Supp. 748, 756 (S.D.N.Y. 1997) (summary judgment appropriate despite plaintiff's allegation

---

[12] Also, plaintiff has not presented evidence of who conducted the second search. There is no evidence to suggest that the officer conducting the alleged second search was defendant Hunsucker.

14

apartment was ransacked). The Court concludes that no rational jury could conclude that this minimal damage was unreasonable in light of the officers' task to complete a thorough search of the van for contraband. Moreover, plaintiff has produced no evidence that defendant Hunsucker wantonly damaged or destroyed his property. Thus, any Fourth Amendment claim based upon this alleged damage to the van during the search cannot survive summary judgment.

Accordingly, defendants' motion for summary judgment on the Fourth Amendment claim is granted.

### B.  Qualified Immunity

Defendant Hunsucker argues, in the alternative, that he is entitled to qualified immunity with respect to the excessive force claim. As set forth below, the Court concludes that there are genuine issues of material fact as to the excessive force claim that preclude summary judgment on qualified immunity grounds.

#### 1.  Legal Standard

According to the Second Circuit, government actors may be shielded from liability for civil damages if their "conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003); *see also Fielding v. Tollaksen*, 257 Fed. App'x 400, 401 (2d Cir. 2007) (explaining that government officers "are protected by qualified immunity if their actions do not violate clearly established law, or it was objectively reasonable for them to believe that their actions did not violate the law."). "A right is clearly established when the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.... The unlawfulness must be apparent." *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir. 1998) (quotation marks omitted). In addition, the Second Circuit has repeatedly stated that qualified immunity only protects officials performing "discretionary functions." *See Simons v. Fitzgerald*, 287 Fed. App'x 924, 926 (2d Cir. 2008) ("'Qualified immunity shields government officials performing discretionary functions from liability for civil damages . . . .'" (quoting *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007))); *Piscottano v. Town of Somers*, 396 F. Supp. 2d 187, 208 (D. Conn. 2005) ("'The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" (quoting *Lee v. Sandberg*, 136 F.3d 94, 100 (2d Cir. 1997))).

As the Second Circuit has also noted, "[t]his doctrine is said to be justified in part by the risk that the 'fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.'" *McClellan v. Smith*, 439 F.3d 137, 147 (2d Cir. 2006) (quoting *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999)). Thus, qualified immunity is not merely a defense, but is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). Accordingly, courts should determine the availability of qualified immunity "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991).

15

With respect to the summary judgment stage in particular, the Second Circuit has held that courts should cloak defendants with qualified immunity at this juncture "only 'if the court finds that the asserted rights were not clearly established, or if the evidence is such that, even when it is viewed in the light most favorable to the plaintiff[ ] and with all permissible inferences drawn in [his] favor, no rational jury could fail to conclude that it was objectively reasonable for the defendants to believe that they were acting in a fashion that did not violate a clearly established right.'" *Ford v. McGinnis*, 352 F.3d 582, 597 (2d Cir. 2003) (quoting *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir. 1996)); *see also Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though [qualified] immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required." (citations and quotation marks omitted)); *Stancuna v. Sherman*, 563 F. Supp. 2d 349, 356 (D. Conn. 2008) ("Here, the court finds that summary judgment on qualified immunity grounds is inappropriate. As the Second Circuit has held, [w]hen a motion for summary judgment is made in the context of a qualified immunity defense, the question of whether the factual disputes are material is even more critical. As noted above, there are issues of material fact in this case that this court may not decide. These issues of fact are critical to determining whether [the defendant] was operating under a reasonable belief as to what kind of search he was permitted to conduct." (citation and quotation marks omitted)).

### 2. Application

Here, the Court examines qualified immunity with respect to plaintiff's surviving 42 U.S.C. § 1983 claim of excessive force. The Court concludes that defendant Hunsucker has failed to set forth undisputed evidence that establishes that he is entitled to qualified immunity; rather there are disputed issues of fact in this case that must be resolved in order to determine whether qualified immunity would be warranted. Accordingly, defendant Hunsucker's motion for summary judgment based on qualified immunity is denied at this juncture.

First, it is axiomatic that the right that plaintiff asserts – namely plaintiff's right under the Fourth Amendment to be free from excessive force – is clearly established. *See Maxwell*, 380 F.3d at 108.

Second, there are genuine issues of material fact that preclude the Court from determining as a matter of law that this clearly established right was not violated. The critical question is whether it was objectively reasonable for defendant Hunsucker to believe that he was not committing such a violation. However, as discussed above, there is a factual dispute as to whether defendant Hunsucker intentionally slammed the door on plaintiff's prosthetic leg. Given that disputed factual issue, the Court declines to so conclude as a matter of law that it was objectively reasonable for defendant Hunsucker to believe he was not violating plaintiff's rights. For example, if plaintiff's version of the facts is accepted and all reasonable inferences are drawn in his favor, it would not have been objectively reasonable for defendant Hunsucker to intentionally slam a car door into plaintiff's leg.

In short, there are disputed factual issues as to defendant Hunsucker's conduct relevant to the determination of whether it was objectively reasonable for defendant Hunsucker to believe his act was lawful, and those factual issues preclude summary

16

judgment on qualified immunity grounds. *See, e.g.*, *Tarver v. City of Edna*, 410 F.3d 745, 754 (5th Cir. 2005) (denying qualified immunity on excessive force claim relating to alleged slamming of police car door on plaintiff's foot and head, and noting that "under [plaintiff's] version of events it is not clear as a matter of law that [the police officer] acted reasonably in slamming the doors on [plaintiff]. At a minimum, determining whether [the police officer's] conduct was objectively reasonable requires factfinding and credibility assessments; dismissal is thus inappropriate at the summary judgment stage.") (quotations and citations omitted); *see also Ference v. Township of Hamilton*, 538 F. Supp. 2d 785, 812 (D.N.J. 2008) (denying qualified immunity on excessive force claim where plaintiff alleged that officer twisted arrestee's arm and slammed his head into a door while escorting him across police station lobby, and concluding: "This is not an allegation of an accidental bump or bruise inflicted in the course of effecting an arrest and, further, if Plaintiff's allegations are true, [the police officer's] actions were not truly taken in the course of effecting Plaintiff's arrest. Rather, running Plaintiff into the door and twisting his arms constituted a separate, independent course of conduct, serving no purpose other than to inflict discomfort and pain. This is not the hazy border between excessive and acceptable force.") (quotations and citations omitted); *Johnson v. City of New York*, No. 05-CV-2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) ("[I]t could not be objectively reasonable for [the officer] to have believed that the use of gratuitous force beyond what is necessary to subdue an individual during a search is allowed under the law."); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 402 (S.D.N.Y. 2005) ("In the case at bar, there is an issue of fact surrounding the circumstances of the alleged excessive force. [Plaintiff] maintains that he was purposely slammed into walls by the COs on the way to the mental health unit, while defendants maintain that if [plaintiff's] body did bump into any walls, it was an accident because the COs were merely slipping on water that was on the floor as a result of the broken sprinkler. These factual issues preclude summary judgment on the defense of qualified immunity.")

Accordingly, summary judgment on qualified immunity grounds is unwarranted.[13]

C. Plaintiff's Negligence Claim

Plaintiff asserts a negligence claim against the defendants.

---

[13] The Court notes that, in order to determine the availability of the qualified immunity defense in this case at trial, the Court is prepared to follow the procedures set forth by the Second Circuit in *Zellner v. Summerlin*, 494 F.3d 344, 367-68 (2d Cir. 2007). Specifically, although "the ultimate question of whether it was objectively reasonable for [defendants] to believe that [their] conduct did not violate a clearly established right, i.e., whether officers of reasonable competence could disagree as to the lawfulness of such conduct, is to be decided by the court," *id.* at 368, the jury must first "resolve[] any disputed facts that are material to the qualified immunity issue." *Id.* Further, "[t]o the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question." *Id.* (citations omitted) (noting that "if the defendant does not make such a request, he is not entitled to have the court, in lieu of the jury, make the needed factual finding"). In particular, "'the jury should decide these issues on special interrogatories.'" *Id.* (quoting *Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990)). Once the jury has determined these factual issues, the Court will – if necessary – afford defendants an additional opportunity to renew their motion with respect to qualified immunity. *See, e.g.*, *Zellner*, 494 F.3d at 364.

17

In New York, in an action for negligence, a plaintiff must prove three elements: "'(1) the existence of a duty on defendant's part to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Alfaro v. Wal–Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Distr.*, 53 N.Y.2d 325, 333, 441 N.Y.S.2d 644, 424 N.E.2d 531 (N.Y. 1981)). The Court construes plaintiff's negligence claim as the failure to provide medical care in both the delay in transporting him to the hospital and the failure to provide treatment after his release from the hospital.

1. Failure to Assert Negligence in Notice of Claim

Defendants argue that, because plaintiff did not explicitly state a negligence claim in his Notice of Claim, the negligence claim must be dismissed. As set forth below, the Court disagrees.

"The purpose of the statutory notice of claim requirement is to afford the public corporation 'an adequate opportunity to investigate the circumstances surrounding [a claim] and to explore the merits of the claim while information is still readily available.'" *Mojica v. N.Y.C. Tr. Auth.*, 117 A.D.2d 722, 723, 498 N.Y.S.2d 448 (N.Y. App. Div. 1986) (quoting *Caselli v. City of New York*, 105 A.D.2d 251, 252, 483 N.Y.S.2d 401 (N.Y. App. Div. 1984)). The test of the notice's sufficiency is whether it includes information sufficient to enable the city to investigate the claim. *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 358, 445 N.Y.S.2d 687 (1981). In determining whether a claimant has complied with the statutory requirements for notice of claims, "the court should focus on the purpose served by the notice of claim and whether, based on the claimant's description, municipal authorities can locate the place, fix the time and understand the nature of the accident." *Niles v. City of Oneida*, No. 6:06-CV-1492, 2009 WL 799971, at *3 (N.D.N.Y. Mar. 25, 2009).

"A theory of liability related to or implied by what is clearly stated in the notice of claim may constitute sufficient mentioning such that it should be permitted to proceed." *Niles*, 2009 WL 799971 at *2 (citation and internal quotation marks omitted). The Court must "review the notice of claim broadly and not look for magic language setting forth each claim." *DC v. Valley Cent. Sch. Dist.*, No. 7:09-cv-9036(WWE), 2011 WL 3480389, at *2 (S.D.N.Y. June 29, 2011). "Thus, not every claim must be set forth *in haec verba*, as long as the details pertaining to such a claim are described sufficiently with respect to time, place and manner to allow the city to investigate the claims." *Gonzalez v. Bratton*, 147 F. Supp. 2d 180, 193 (S.D.N.Y 2001) (quotation marks and citation omitted).

> Plaintiff's notice of claim asserted:
>
> This claim is against the Village for injuries and damages sustained by me when Police Officer Michael Hunsucker slammed the door on my left knee, which was attached to a prosthesis, when I was falsely arrested; when I was wrongfully detained; when I was denied medication and medical treatment; and when my car was wrongfully searched and damaged. I believe that the above also violated my constitutional, civil and human rights.

(Defs.' Ex. L, Notice of Claim.) Plaintiff then explicitly explained the time and place of the incident and his injuries.

The Court finds that the Notice of Claim sets forth the basis for a negligence claim against the Village of Southampton. Specifically, plaintiff's Notice of Claim put the Village on sufficient notice of the events underlying plaintiff's negligence claim, and allowed the Village to investigate the events underlying the claim. Plaintiff's negligence claim was subsumed within the other claims. Thus, the Notice of Claim fulfilled New York's notice requirement. *See, e.g.*, *Gonzalez*, 147 F. Supp. 2d at 193 (although intentional infliction of emotional distress not specified initially as a claim, the city defendants knew of the events underlying the claim and thus had sufficient notice to fulfill New York's notice requirement). Accordingly, summary judgment on this ground is denied.

2. Failure to Name Individual Defendants in the Caption of Notice of Claim

Additionally, defendants argue that, because defendant Hunsucker was not named in the caption of the Notice of Claim, any negligence claim against him cannot survive summary judgment. As discussed below, the Court concludes that the naming of defendant Hunsucker in the Notice of Claim itself was sufficient to satisfy the statutory notice requirement, even though he was not also listed in the caption of the Notice.

The Court recognizes that it is well settled that "General Municipal Law § 50-e makes unauthorized an action against individuals who have not been named in a notice of claim." *DC v. Valley Cent. Sch. Dist.*, 2011 WL 3480389, at *1 (quotations and citations omitted) (collecting cases). In the instant case, defendant Hunsucker is explicitly named in the Notice of Claim and his alleged unlawful acts are described in some detail. The Court concludes that, although his name did not also appear in the caption of the Notice, the clear identification of defendant Hunsucker in the substance of the Notice is sufficient to satisfy this requirement. Accordingly, summary judgment on this ground is denied.

3. Evidence of Negligence

Defendants argue that plaintiff's negligence claim cannot survive summary judgment because defendants' actions were reasonable and breached no duty to plaintiff. As discussed *supra*, plaintiff has produced evidence that defendant Hunsucker caused his injury and a jury could, if it viewed the evidence most favorably to the plaintiff, reasonably conclude that any alleged movement of the door by Hunsucker was unintentional, but nevertheless negligent in light of all the circumstances.[14] Moreover, plaintiff has testified that he requested medical assistance from Village police officers and was denied medical treatment for over two hours after arriving at the police station. Plaintiff has also produced

---

[14] Although plaintiff alleges that defendant Hunsucker intentionally (rather than negligently) caused the injury to his leg, he is permitted to plead a negligence claim in the alternative against Hunsucker. *See, e.g.*, *Kuar v. Mawn*, 08-CV-4401 (JFB)(ETB), 2011 838911, at *14 (March 4, 2011) (allowing plaintiff to plead excessive force claim and negligence claim in the alternative); *see also Rice v. District of Columbia*, 774 F. Supp. 2d 25, 32-33 (D.D.C. 2011) (same). The Court recognizes that, under New York law, "once intentional offensive contact has been established, the actor is liable for assault and not negligence, even when the physical injuries may have been inflicted inadvertently." *Oliver v. Cuttler*, 968 F. Supp. 83, 92, (E.D.N.Y. 1997) (quoting *Mazzaferro v. Albany Motel Enterprises, Inc.*, 127 A.D.2d 374, 515 N.Y.S.2d 631, 632-33 (N.Y. App. Div. 1988)). However, because in this case a jury could reasonably conclude that any alleged contact by moving the door was either intentional or inadvertent, both claims survive summary judgment. The jury will be instructed that, if they find that the contact was intentional, they should not proceed to the alternative theory of negligence.

evidence that he was denied Motrin and ice by police officers despite his doctor's recommendation.  If plaintiff's testimony is credited, he has produced sufficient evidence to create a disputed issue of fact as to whether Village officers breached their duty to him in (1) negligently causing his injury at the scene of the stop; (2) delaying plaintiff's transportation to the hospital; and (3) denying plaintiff medical treatment after his release from the hospital.  Accordingly, summary judgment of this ground is denied.

### III. CONCLUSION

For the foregoing reasons, the Court denies defendants' motion for summary judgment with respect to the excessive force claim against defendant Hunsucker and the negligence claims against Hunsucker and the Village of Southampton.  The Court grants the defendants' motion for summary judgment with respect to the claims of deliberate indifference to a serious medical need and unreasonable search and seizure against defendant Hunsucker.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated:  January 20, 2012
        Central Islip, NY


\* \* \*


Plaintiff is represented by David Schlacter, Law Offices of David Schlachter, 626 RexCorp Plaza Uniondale, NY 11556.  The attorneys for the defendants are Jeltje DeJong, Joshua S. Shteierman, and Kelly E. Wright, Devitt Spellman Barrett, LLP, 50 Route 111, Smithtown, NY 11787.